http://www.va.gov/vetapp16/Files4/1630429.txt

Citation Nr: 1630429 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 03-13 848 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas

THE ISSUES

1. Entitlement to service connection for diabetes mellitus, to include as due to exposure to chemicals, based upon substitution.

2. Entitlement to service connection for arterial sclerotic cardiovascular occlusive disease with partial arterial obstruction, to include as due to exposure to chemicals, based upon substitution.

3. Entitlement to service connection for cardiovascular disease, status post coronary artery bypass grafting, to include as due to exposure to chemicals, based upon substitution.

4. Entitlement to service connection for chronic renal insufficiency, to include as due to exposure to chemicals, based upon substitution.

5. Entitlement to service connection for hypertension, to include as due to exposure to chemicals, based upon substitution.

6. Entitlement to service connection for erectile dysfunction, to include as secondary to diabetes mellitus, based upon substitution.

7. Entitlement to service connection for bilateral peripheral neuropathy, to include as secondary to diabetes mellitus, based upon substitution.

REPRESENTATION

Appellant represented by: Texas Veterans Commission

ATTORNEY FOR THE BOARD

J. T. Brant, Associate Counsel

INTRODUCTION

The Veteran served on active duty in the United States Navy from October 1961 to February 1966. The Veteran died in September 2014. The Appellant is the Veteran's surviving daughter, and has been accepted as the Veteran's substitution for the purposes of processing the appeal of the issues of entitlement to service connection for diabetes mellitus, erectile dysfunction, bilateral peripheral neuropathy, arterial sclerotic cardiovascular occlusive disease with partial arterial obstruction, cardiovascular disease, status post coronary artery bypass grafting, chronic renal insufficiency, and hypertension to completion. 

This matter is before the Board of Veterans' Appeals (Board) on appeal from a February 2003 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas. 

The Veteran testified before a decision review officer at the RO in August 2003. A transcript is associated with the record.

In an August 2004 decision, the Board denied entitlement to service connection for diabetes mellitus with erectile dysfunction and bilateral peripheral neuropathy; arterial sclerotic cardiovascular occlusive disease with partial arterial obstruction; cardiovascular disease, status post coronary artery bypass grafting; chronic renal insufficiency; and hypertension. The Veteran appealed the August 2004 Board decision to the United States Court of Appeals for Veterans Claims (Court). In August 2005, VA and the Veteran's representative filed a joint motion for remand, which requested that the August 2004 Board decision be vacated and remanded for failure of the duty to assist and inadequate reasons and bases. In August 2005, the Court granted the motion and remanded the case to the Board. 

In May 2006, the Board remanded the case for the gathering of additional records, which were subsequently associated with the claims folder. In March 2008, the Board requested an independent medical expert (IME) opinion. In August 2008, the Board remanded the claim for initial review of the IME opinion by the Agency of Original Jurisdiction (AOJ). This review was completed in a December 2008 Supplemental Statement of the Case (SSOC), which continued to deny entitlement to service connection.

In an April 2011 decision, the Board again denied entitlement to service connection for diabetes mellitus with erectile dysfunction and bilateral peripheral neuropathy; arterial sclerotic cardiovascular occlusive disease with partial arterial obstruction; cardiovascular disease, status post coronary artery bypass grafting; chronic renal insufficiency; and hypertension. The Veteran appealed the April 2011 Board decision to the Court. In September 2014, the Court issued a memorandum decision finding the March 2008 IME inadequate. The memorandum decision vacated and remanded the Veteran's claims for further action. The Board notes that the Veteran died in September 2014, while this matter was with the Court. However, in January 2015, the Veteran's three daughters moved to be substituted as appellants for the Veteran. In March 2015, the Court accepted the above-noted daughter as the Veteran's substitution for the purposes of processing the appeal to completion. See 38 U.S.C.A. § 5121A. The claims are now back before the Board for further appellate proceedings.

At the time of the April 2011 Board decision, the Veteran was represented by the Vietnam Veterans of America. In July 2011, the Veteran submitted a VA Form 21-22a, appointing a private attorney as his representative. In October 2014, the Appellant submitted a new VA Form 21-22, appointing the Texas Veterans Commission as her representative. In October 2015, the Board re-sent a 90-day Letter (which is sent following a remand of a claim from the Court back to the Board) to the Appellant's new representative (Texas Veterans Commission).

This is a paperless appeal located on the Veterans Benefits Management System (VBMS). The Virtual VA paperless claims processing system contains a VA Form 21-22 dated in October 2014, appointing the Texas Veterans Commission as the appellant's representative; various documents regarding the appellant's claim for accrued benefits; and VA treatment records. Other documents on the Virtual VA paperless claims processing system are either duplicative of the evidence of record or not pertinent to the present appeal. 

FINDINGS OF FACT

1. There is at least an approximate balance of positive and negative evidence as to whether the Veteran's diabetes mellitus, arterial sclerotic cardiovascular occlusive disease with partial arterial obstruction, cardiovascular disease, status post coronary artery bypass grafting, chronic renal insufficiency, and hypertension disabilities were related to his active service, to include his chemical exposure therein.

2. The preponderance of the evidence of record supports a finding that the Veteran's erectile dysfunction was related to his service-connected diabetes.

3. The preponderance of the evidence of record supports a finding that the Veteran's bilateral peripheral neuropathy was related to his service-connected diabetes.

CONCLUSIONS OF LAW

1. Resolving doubt in favor of the Veteran, the criteria for service connection for diabetes mellitus have been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2015).

2. Resolving doubt in favor of the Veteran, the criteria for service connection for arterial sclerotic cardiovascular occlusive disease with partial arterial obstruction have been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2015).

3. Resolving doubt in favor of the Veteran, the criteria for service connection for cardiovascular disease, status post coronary artery bypass grafting, have been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2015).

4. Resolving doubt in favor of the Veteran, the criteria for service connection for chronic renal insufficiency have been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2015).

5. Resolving doubt in favor of the Veteran, the criteria for service connection for hypertension have been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2015).

6. Resolving doubt in favor of the Veteran, the criteria for service connection for erectile dysfunction have been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.310 (2015).

7. Resolving doubt in favor of the Veteran, the criteria for service connection for bilateral peripheral neuropathy have been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.310 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veterans Claims Assistance Act of 2000 (VCAA)

The VCAA describes VA's duties to notify and assist veterans in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). In light of the favorable decision herein as to the issues on appeal, the Board finds that any deficiencies in notice were not prejudicial to the Veteran. 

Service Connection

Establishing service connection generally requires evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. See Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004). 

Service connection may also be granted for a disability that is proximately due to or the result of an established service-connected disability. 38 C.F.R. § 3.310 (2015). This includes disability made chronically worse by a service-connected disability. Allen v. Brown, 7 Vet. App. 439 (1995). 

In determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination, the benefit of the doubt is afforded the claimant. 

The Appellant is seeking service connection for diabetes mellitus, erectile dysfunction, bilateral peripheral neuropathy, arterial sclerotic cardiovascular occlusive disease with partial arterial obstruction, cardiovascular disease, status post coronary artery bypass grafting, chronic renal insufficiency, and hypertension, due to the Veteran's exposure to chemicals in service, based upon substitution.

The Veteran served aboard the U.S.S. Granville S. Hall during the Shipboard Hazard and Defense (SHAD) Project. During his service, the U.S.S. Granville S. Hall participated in the following SHAD tests - Autumn Gold, Eager Belle II, Big Tom, Fearless Johnny, Flower Drum I, High Low, and Shady Grove. The following agents, stimulants, and tracers were used: Bacillus globiggi (BG), Coxiella burnetii (OU), Pasteurella tularensis (UL), VX nerve agent, Diethyphthlate, Bacillus substilis var. Niger (Bacillus globigii (BG)), Sarin nerve agent, Sulphur dioxide, Zinc Cadmium Sulfide, and Methylacetoacetate.

According to the Veteran, the participants were not informed of the details of the tests, and protective clothing and equipment were not issued. He also indicated that there were no decontamination efforts. At a January 2003 VA general medical examination, the Veteran reported that after three months of tests, he began experiencing severe nausea and fatigue. He indicated that after three months of symptoms, he stayed out of the restricted area and his symptoms improved.

The Veteran's service treatment records are unremarkable for any chronic health problems during his active duty service. At his October 1961 entrance examination, his blood pressure was 130/80. At his February 1966 discharge physical, his blood pressure was 126/72. Urinalysis results were negative for sugar. There are no records of any complaints or treatment for nausea and fatigue.

Prior to his death, the Veteran had a long-standing history of diabetes mellitus, hypertension, and hypercholesterolemia. At a January 2003 VA examination, he reported that he was diagnosed with cataracts in 1980, which led to a diagnosis of diabetes mellitus. VA outpatient treatment records indicated that the Veteran was diagnosed with diabetes mellitus, hypertension, and hyperlipidemia in 1990. In June 1999, the Veteran was diagnosed with coronary artery disease and underwent coronary artery bypass grafting in January 2000. In September 2001, he was diagnosed with diabetic peripheral neuropathy. He has reported having erectile dysfunction secondary to diabetes since 2000. In 2004, he had a stroke, which was diagnosed by a head cat scan (CT) in May 2004.

The Veteran alleged that his health problems were a result of having been exposed to agents, stimulants, and tracers during the SHAD tests. A January 2003 VA examiner opined that it was unlikely that chemical exposure was responsible because these problems are seen frequently in people who have not been exposed to chemicals. In an October 2007 brief, the Veteran's representative pointed to a report released by the Institute of Medicine of the National Academies on May 30, 2007, entitled "Long Term Health Effects of Participation in Project SHAD." 

In an independent medical opinion dated in May 2008, an endocrinologist concluded that it was less likely than not that the Veteran's diabetes mellitus and secondary conditions were causally related to exposure to noxious substances, to include any of the agents, stimulants, and traces used when he was a participant in Project SHAD tests in the 1960's. To support his opinion, he pointed to the high prevalence of Type 2 diabetes mellitus in the U.S. and the high frequency of hypertension, ASHD, PAD, ED, CRD, and peripheral neuropathy associated with Type 2 diabetes mellitus.

In briefs dated in June 2008 and March 2011, the Veteran's representative indicated that the Veteran was exposed to diethyl phthalate, a chemical which "is garnering much attention for its characteristics as an endocrine disruptor, much like Agent Orange." The representative pointed to three studies addressing this research. The representative specifically noted a study published on March 14, 2007, in the journal Environmental Health Perspectives titled "Concentrations of Urinary Phthalate Metabolites are Associated with Increased Waist Circumference and Insulin Resistance in Adult U.S. Males," which showed that phthalates, including diethyl phthalate, were associated with increased waist circumference and insulin resistance in adult U.S. males. 

In a Memorandum Decision dated in September 2014, the Court found that the May 2008 IME opinion was inadequate. In light of the September 2014 Memorandum Decision, the Board requested another expert medical opinion regarding whether the Veteran's claimed diabetes mellitus, erectile dysfunction, bilateral peripheral neuropathy, arterial sclerotic cardiovascular occlusive disease with partial arterial obstruction, cardiovascular disease, status post coronary artery bypass grafting, chronic renal insufficiency, and/or hypertension disabilities were due to his exposure to any of the chemicals used when he was a participant in Project SHAD tests in the 1960's. 

In a March 2016 opinion, a general internist opined that it was more likely than not that the Veteran's diabetes mellitus, arterial sclerotic cardiovascular occlusive disease with partial arterial obstruction, cardiovascular disease, status post coronary artery bypass grafting, chronic renal insufficiency, and hypertension disabilities were all related to service, particularly his exposures in SHAD testing. The general internist explained that a review of the government's own testing data demonstrates an increased incidence of cardiovascular and endocrine conditions in SHAD-exposed veterans versus control groups, depending on the individual toxin. He explained that many of the SHAD tests do not have data published, meaning they were either not tested or the government has chosen not to release the results. He noted that the Veteran was used as a test subject even though he was not given informed consent to be the test subject or appropriate safety equipment. The general internist further indicated that diabetes is well-known to have increased the incidence of erectile dysfunction and bilateral peripheral neuropathy. He indicated that the Veteran was not given the opportunity by the government to have informed knowledge of his exposures and risks and to be given a chance to have his medical conditions specifically monitored for his increased risks.

The March 2016 expert medical opinion supports a finding that the Veteran's diagnosed diabetes mellitus, arterial sclerotic cardiovascular occlusive disease with partial arterial obstruction, cardiovascular disease, status post coronary artery bypass grafting, chronic renal insufficiency, and hypertension disabilities developed as a result of his active duty service, particularly his chemical exposures in SHAD testing. The March 2016 medical opinion also supports a finding that the Veteran's diagnosed erectile dysfunction and bilateral peripheral neuropathy disabilities were secondary to his now service-connected diabetes mellitus.

The Board acknowledges the negative opinions of record. However, as noted above, these opinions contain inadequate rationale. Therefore, resolving all reasonable doubt in favor of the Appellant, the Board finds that service connection is warranted for diabetes mellitus, arterial sclerotic cardiovascular occlusive disease with partial arterial obstruction, cardiovascular disease, status post coronary artery bypass grafting, chronic renal insufficiency, and hypertension. Additionally, in light of the grant of service connection for diabetes mellitus herein, service connection is also warranted for erectile dysfunction and bilateral peripheral neuropathy as secondary to the service-connected diabetes mellitus.

ORDER

Entitlement to service connection for diabetes mellitus, based upon substitution, is granted.

Entitlement to service connection for arterial sclerotic cardiovascular occlusive disease with partial arterial obstruction, based upon substitution, is granted.

Entitlement to service connection for cardiovascular disease, status post coronary artery bypass grafting, based upon substitution, is granted.

Entitlement to service connection for chronic renal insufficiency, based upon substitution, is granted.

Entitlement to service connection for hypertension, based upon substitution, is granted.

Entitlement to service connection for erectile dysfunction, as secondary to the service-connected diabetes mellitus, based upon substitution, is granted.

Entitlement to service connection for bilateral peripheral neuropathy, as secondary to the service-connected diabetes mellitus, based upon substitution, is granted.

____________________________________________
MICHAEL LANE
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs